IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DAVID LEE WELLS, JR.**                                                      **PLAINTIFF**

VS.                            No. 4:21-cv-01193 PSH

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                                **DEFENDANT**

**ORDER**

   Plaintiff David Lee Wells, Jr., ("Wells"), appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny his claim for Child Disability Benefits ("CDB") and Supplemental Security Income ("SSI"). Wells maintains the Administrative Law Judge ("ALJ") erred: (1) by failing to properly evaluate Wells' disability prior to age 18; (2) by erroneously assessing Wells' residual functional capacity ("RFC") for the period beginning at age 18; and (3) by failing to sustain the ALJ's burden of demonstrating there were jobs which Wells could perform. The parties have ably summarized the testimony given at the administrative hearing conducted on December 10, 2020. (Tr. 2683-2707).

   The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support

Kijakazi's decision.[1] 42 U.S.C. § 405(g). The relevant period under consideration for CDB is from April 1, 2015, the alleged onset date, through March 27, 2018, when Wells attained age 18. The relevant period for SSI benefits is from March 27, 2018, through April 28, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by his attorney, Wells stated he had back fusion surgery in April 2017, necessitated by an injury where "part of my vertebrae was snapped off." (Tr. 2690). He described continuing pain after the surgery, treated without success by topical cream. He also stated he was unable to get out of bed for the first three months following the surgery and was unable to get on his feet for a full day for the first year thereafter. Wells stated he was still dealing with back pain at the administrative hearing. Also, at the time of the hearing Wells was working 20-25 hours a week at Slim Chickens, a fast food restaurant, with the hours spread over 3-5 days. According to Wells, his boss accommodates his back pain and diabetes, and he works an 8 hour day only once a week, leaves work early about once a week, takes needed breaks, and calls in sick at least twice monthly.

Wells began dealing with diabetes in December 2017, and an insulin pump was

---

[1] The transcript itself contained duplicate entries and, organized as one entry with sixty attachments, was difficult to navigate. See docket entry no. 8.

installed about a year before the hearing. Although he noted significant improvement, Wells estimated he had been hospitalized eight times after receiving the pump. Wells described himself as a "brittle diabetic" who cannot control his blood sugar level. (Tr. 2696). Fatigue, shortness of breath, and three heart attacks in July 2018 are symptoms related to his diabetes, according to Wells.

At the time of the hearing, Wells was living with his girlfriend, who tended to dishes and laundry, and two other roommates. Wells helps with bills and paperwork but testified he could "probably not" live on his own. (Tr. 2700).

The ALJ questioned Wells further. Wells described a typical day as driving to and from work, where he occasionally operated cooking equipment, and sleeping in his off time. He indicated he and his girlfriend did not have hobbies or other outside activities. (Tr. 2689-2703).

Elizabeth Clem ("Clem"), the vocational expert, testified. The ALJ posed a hypothetical question, asking her to consider a hypothetical worker of Wells' age, education (Wells obtained a GED), and experience (Wells had no work rising to the level of substantial gainful activity), who could perform light work with the following restrictions: he could only occasionally stoop, crouch, crawl, or kneel; and he could not work around hazards such as unprotected heights or dangerous moving mechanical parts. Clem testified that such a hypothetical worker could perform some work in the

national economy, such as janitorial jobs or cafeteria attendant. A second hypothetical question was posed, altering the exertion level to sedentary but otherwise retaining the same restrictions. Clem stated such a worker could perform the jobs of assembler and surveillance monitor. Clem stated no jobs would be available to Wells if he were absent at least three days a month, off-task for up to 20% of the workday, and if he would need unscheduled breaks throughout the day. (Tr. 2703-2706).

*ALJ's Decision:*

In his April 28, 2021, decision, the ALJ first set forth the childhood standard of disability, a three step sequential evaluation.[2] The ALJ also noted the familiar five step sequential evaluation for adult disability.

*Childhood Disability Findings*

The ALJ determined that Wells, prior to turning 18, had the severe impairments of diabetes mellitus, degenerative disc disease, and congestive heart failure. The ALJ considered Wells' mood disorder and found it non-severe. In reaching this conclusion, the ALJ considered the "paragraph B" criteria regarding mental

---

[2] Step one is a determination of whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine if the claimant has a medically determinable severe impairment, or a combination of impairments which are severe. At step three, the ALJ considers whether the claimant has an impairment or combination of impairments that meet or medically equals the criteria of a listing, or that functionally equals the listings. At step three, the ALJ assesses six domains of functioning, and a listing is met if the claimant has marked limitations in two domains or an extreme limitation in one domain.

impairments, finding Wells had a mild limitation in all four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

The ALJ found Wells, prior to attaining age 18, did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered if Wells met Listing 101.15 (disorders of the skeletal spine resulting in compromised nerve root), 101.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 109.00 (endocrine disorders), and 104.02 (chronic heart failure).

The ALJ issued detailed findings on the six functional equivalence domains: (1) Acquiring and Using Information – no limitation.

(2) Attending and Completing Tasks – less than marked limitation.

(3) Interacting and Relating with Others – no limitation.

(4) Moving About and Manipulating Objects – less than marked limitation.

(5) Caring for Yourself – less than marked limitation.

(6) Health and Physical Well-Being – marked limitation.

Since Wells did not have an impairment or combination of impairments that resulted in marked limitations in two domains or extreme limitation in one domain of functioning, the ALJ found Wells was not disabled prior to attaining age 18.

*Adult Disability Findings*

The ALJ found that Wells had not developed any new impairment(s) since attaining age 18. In addition, the ALJ found that Wells, since turning 18, did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, Reg. No. 4. The ALJ expressly considered if Wells met Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root). The ALJ also considered if Wells met Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina) and Listing 4.02 (chronic heart failure). The ALJ also discussed the impact of Wells' diabetes mellitus and its interaction with other Listings.

The ALJ judged Wells to have the RFC to perform light work with the restrictions which mirrored those detailed in the initial hypothetical question posed to Clem. The ALJ assessed Wells' subjective allegations, citing the appropriate factors and finding his statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 31).

The ALJ also discussed the medical evidence, noting Wells' history of diagnosis and treatment for degenerative disc disease, diabetes mellitus, and chronic heart failure. The ALJ cited the back surgery Wells underwent in April 2017, as well as a report from June 2018 of uncontrolled diabetes mellitus. The ALJ also noted

hospital records in June and November 2019 indicating Wells' chronic noncompliance with diabetes treatment. The ALJ discussed Wells' suspected myocardial infarction in June 2018.

The ALJ addressed activities of daily living, considering Wells' responses in a May 2018 Adult Function Report and Pain Questionnaire, the testimony offered at the hearing regarding his part-time work, and July 2018 medical records wherein Wells informed Dr. Ott that he drives and does most of his own daily household chores. The ALJ also noted that the insulin pump, when used properly by Wells, "appears to address his diabetes to the extent that he can perform a limited range of light exertional work." (Tr. 30).

Additionally, the ALJ considered the opinions of the state agency medical consultants, finding the assessments (the consultants restricted Wells to light work with occasional stooping, kneeling, and crouching) persuasive.

The ALJ found Wells had no past relevant work. Relying upon Clem's testimony, the ALJ held Wells could perform light work in the national economy. Accordingly, the ALJ concluded he was not disabled. (Tr. 11-33).

*Wells' First Claim – ALJ improperly evaluated his disability prior to age 18*

Wells contends the ALJ erred by finding his mental impairments were not severe. According to Wells, this finding ignores his "very long history of treatment

for ADHD, oppositional/defiant behavior, impulsivity, aggression, anger, and disruptive behavior disorder." Docket entry no. 10, page 14. In support, Wells cites records from Counseling Associates, showing oppositional and anger issues in June 2015 (Tr. 3766-67); Piney Ridge Treatment Center, showing Wells' discharge summary in May 2015 (Tr. 5560); Piney Ridge Center progress note from July 2014 reflecting continued struggles with impulsivity and verbal aggression (Tr. 5207); Piney Ridge Center progress note from July 2014 reflecting outbursts and aggressive behavior (Tr. 5203); and a June 2014 diagnosis from Piney Ridge Center of oppositional defiant disorder, perpetrator of sexual abuse of a child, and problems with primary support group, educational system and legal system (Tr. 5535).

The citations provided by Wells do not adequately support his argument of ALJ error, primarily due to the timing of his treatment notes. The relevant period for considering child benefits began on April 1, 2015. The treatment notes cited by Wells all predate the onset date, with the exception of the May 2015 discharge summary and the June 2015 entry from Counseling Associates. The record supports Wells' assertion that he has a history of mental impairments. This history, however, is documented as extending only momentarily into the relevant period.

In addition to the treatment history, Wells argues that the July 2018 consultative examination of Dr. Don Ott ("Ott") should not have been relied upon by the ALJ.

Ott's findings were in "stark contrast" to Wells' childhood mental health findings.[3] Docket entry no. 10, page 15.  Wells notes that Ott was not provided with medical records documenting his mental health problems.  Again, the timing is critical.  Ott acknowledged he received no mental health treatment records at the time of his 2018 examination.  This is understandable, as Wells' recitation of the medical records reflects no mental health treatment after June 2015.  Thus, the only mental health records which could have been provided to Ott were almost entirely from the time before the relevant period for purposes of disability benefits.  The ALJ did not err in his evaluation of Ott's consultative examination.

Wells alleges that error in considering his mental impairments resulted in an erroneous RFC determination.  The Court finds substantial evidence supports the ALJ's mental impairment conclusion, and it follows that the RFC determination (discussed in greater depth below) was not erroneous.  There is no merit to the first claim advanced by Wells.

*Claim Two– ALJ error in evaluating his RFC beginning at age 18*

---

[3] Ott noted Wells took psychotropic medication for ADHD between the ages of 10 and 14, had back surgery, was diagnosed with diabetes, and obtained his GED in 2017.  Ott found no overt evidence of organic impairment and opined "his limitations are mostly physical."  (Tr. 3524).  Ott diagnosed Wells with mood disorder, and found no specific limitations in the following areas: ability to attend and sustain concentration on basic tasks, capacity to sustain persistence in completing tasks, and capacity to complete work-like tasks within an acceptable timeframe.  (Tr. 3519-3527).

The ALJ is responsible "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Wells takes issue with the ALJ's RFC determination, contending the ALJ erred in considering his mental and physical impairments, and improperly analyzed his subjective complaints.

As with his argument relating to child benefits, Wells contends the ALJ erred in failing to deem his mental impairments to be severe. Wells cites medical notes where his affect is flat, he sleeps often, and he is not receptive to education about his diabetes. He also asserts his noncompliance with a diabetes regimen is "manifestation of . . . defiance and inattention." Docket entry no. 10, page 16.

These arguments are without merit. Occasional recordings of a flat affect fall far short of demonstrating a severe mental impairment. Although he had "a rather flat affect today" on July 9, 2019, the medical provider also wrote that Wells maintained a moderate exercise level and a regular diet. (Tr. 4292). Similarly, the flat affect noted on August 18, 2018, coexisted with a finding that same day of "normal mood, behavior, speech, dress, motor activity, and thought process." (Tr. 3531).

Wells subjectively reported sleep issues on occasions, such as on February 9 and August 27, 2019. (Tr. 3959, 4370). Indeed, he was diagnosed with insomnia at

the August 2019 visit. Neither these subjective statements nor the diagnosis of insomnia amount to a severe mental impairment, and the ALJ is not faulted in this respect.

Finally, Wells ties his repeated noncompliance with his diabetes treatment to his mental impairments, suggesting he was unable to comply with the proper course of treatment. Wells cites no medical evidence or opinion to bolster this claim.

Substantial evidence supports the ALJ's assessment of Wells' mental impairments to be non-severe.

Wells next argues that the ALJ erred in assessing his physical impairments, assessing him capable of performing light work with some limitations. Wells contends his 2017 back surgery and associated pain, his sleep issues, and his numerous emergency room visits render him unable to perform work at the level assigned by the ALJ.

The ALJ noted that the April 2017 back surgery was followed by a July 2017 post-operative examination where Wells was found to be grossly neurologically intact, with stable gait, good coordination and balance. Wells had "done exceptionally well," according to his physician, and was to return "only as needed." (Tr. 3159). While the ALJ acknowledged Wells' testimony of continuing back pain, the medical records consistently reflect normal gait, normal range of motion, and no medical restrictions

which would preclude standing and walking to perform light work. Kijakazi cites approximately sixty-five instances of normal findings regarding gait and station from 2017 through 2020. Docket entry no. 13, page 11. Wells does not dispute these findings but still maintains he is unable to stand and walk to perform light work. The volume of medical evidence supports the ALJ's consideration of Wells' back issues.

The RFC determination is also erroneous, according to Wells, because the ALJ improperly evaluated his subjective complaints. The primary arguments here are that Wells sleeps so much that he is unable to work on a full time basis and his mental impairments interfere with his ability to follow diabetes treatment requirements.

After summarizing the objective medical evidence, the ALJ considered Wells' daily activities. The ALJ cited the May 2018 Adult Function Report executed by Wells. This document reflects Wells' daily activities include caring for dogs and cats, making simple meals, assisting with his mother (helping her get around), assisting with cleaning and cooking, driving, shopping, managing finances, seeing others, and getting along with authority figures. (Tr. 2979-2986). Inconsistent with his claim of excessive sleep, Wells indicated he "can't sleep for long and have trouble falling asleep."[4] (Tr. 2980). The ALJ also noted that Wells obtained a GED in 2017, and the

---

[4] Wells' difficulty falling asleep is consistent with the August 2019 diagnosis of insomnia. (Tr. 4370).

director of the program wrote that Wells "was able to sit, stand, walk, and speak, . . . understand, carry out, remember instructions, and respond appropriately in our program." (Tr. 3318). Finally, the ALJ cites a November 2019 treatment note where Wells rated his diet as fair and indicated he exercised twice weekly, engaging in mixed martial arts. (Tr. 4902). And, at the hearing Wells testified to the part-time work he was performing at the time. Substantial evidence supports the ALJ's findings with regard to Wells' subjective complaints.

In sum, the ALJ's RFC evaluation is supported by substantial evidence. Notwithstanding Wells' many trips for emergency care, often tied to his noncompliance with medication and diet, the ALJ's RFC ruling was correct.

*Claim Three – the ALJ failed to demonstrate there were jobs which Wells could perform.*

Wells correctly states the law; at step five, the burden of proof is on the ALJ to prove there are jobs which he can perform despite his impairments. Since the hypothetical question was built upon the RFC, Wells reasons that Clem's testimony regarding jobs was flawed. So, this is simply a second challenge to the RFC determination. Having previously found the RFC to be supported by substantial evidence, it follows that the hypothetical question was acceptable, and Clem's testimony was reliable. There is no error.

In summary, the ultimate decision of Kijakazi was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Wells' complaint is dismissed with prejudice.

IT IS SO ORDERED this 13th day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE